Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BILLY PETER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANNE E. LOPEZ IN HER | ) | Civil Action _____ |
| OFFICIAL CAPACITY AS THE | ) | |
| ATTORNEY GENERAL OF | ) | Memorandum in Support of Motion for |
| THE STATE OF HAWAII, | ) | Preliminary Injunction |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **Table of Contents**

I.    Introduction ...................................................................................1

I.    Statement of Facts ..........................................................................3

  A.  Standard for a Preliminary Injunction ........................................4

II.   Plaintiff is Likely to Succeed on the Merits ...................................5

  A.  H.R.S. § 134-2's restrictions on COFA Aliens violates the Second
  Amendment.........................................................................................5

III.  Plaintiff's Conduct is Covered by the Second Amendment's Plain Text .......7

  A.  H.R.S. § 134-2's Restrictions on COFA Aliens violates the Equal Protection
  Clause of the Fourteenth Amendment ................................................18

IV.   Plaintiff will suffer irreparable harm............................................22

V.    Granting the TRO/PI is in the Public Interest and Serves Equity .................23

VI.   Waiver of Bond is Proper and Appropriate Under These Circumstances .....24

VII.  This Court Should Consolidate Pursuant to Rule 65(a)(2) ...........................24

VIII. Conclusion ..................................................................................25

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................5

*Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ...............18

*Ashaheed v. Currington*, 7 F.4th 1236 (10th Cir. 2021) .........................................21

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ......................................... 4, 5, 23, 24

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ................................. 5, 6, 7, 12

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794 (D. Mont. Sep. 16, 2020) ....................................................25

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014).............................23

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018) .....24

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996)......................................................24

*Elrod v. Burns*, 427 U.S. 347 (1976).......................................................................22

*Ezell v. City of Chi.,* 651 F.3d 684 (7th Cir. 2011) ...................................................23

*Fletcher v. Haas*, 851 F. Supp. 2d 287 (D. Mass. 2012) ....................................8, 19

*Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136 ................ 2, 8, 19, 20

*Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809 (9th Cir. 2016) ................. 20, 22

*Graham v. Richardson*, 403 U.S. 365 (1971) ..........................................................18

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) .............................................24

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019).................................................. 11, 16

*Kipke v. Moore*, Civil Action No. GLR-23-1293, 2023 U.S. Dist. LEXIS 174934 (D. Md. Sep. 29, 2023) ....................................................................................... 12, 13

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ..................................23

*Koons v. Platkin*, Civil 22-7464 (RMB/AMD), 53 (D.N.J. May. 16, 2023).............13

*Korab v. Koller*, No. CIV. 10-00483 JMS, 2010 WL 4688824 (D. Haw. Nov. 10, 2010) ...............................................................................................................18

*Lara v. Commr. Pennsylvania State Police*, 91 F.4th  (3d Cir. 2024) cert. granted, judgment vacated sub nom. *Paris v. Lara*, No. 24-93, 2024 WL..........................11

*Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006)....................................9

*McDonald v. City of Chi.*, 561 U.S. 742, 791, 130 S. Ct. 3020 (2010)........ 5, 11, 12

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)....................................................22

*Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985) ..................................................20

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)...................................23

*N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111 (2022)................... passim

*Off. of Atty. Gen. v. Phillip*, No. CV06-0017-GA, 2008 WL 305343 (N. Mar. I. Jan. 30, 2008) ...................................................................................................................1

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) .................................................................24

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ................................................23

*Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707 (9th Cir. 2022)....................5

*Roberts v. City of Honolulu*, 938 F.3d 1020 (9th Cir. 2019) ....................................2

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ...............................................23

*Say v. Adams*, 2008 U.S. Dist. LEXIS 20183, 2008 WL 718163 (W.D. Ky. Mar. 14, 2008) ...................................................................................................20

*Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857)....................................................11

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) .................................................21

*Smith v. South Dakota*, 781 F. Supp. 2d 879 (D.S.D. 2011) (citing *Application of Griffiths*, 413 U.S. 717, 725, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973)...............19

*State v. Ibrahim,* 164 Wash. App. 503, 269 P.3d 292 (2011)...................................8

*Thomas v. Review Bd. of Ind.do Employment Sec. Div*., 450 U.S. 707 (1981) .......19

*Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) ...............................18

*United States Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) ..............................22

*UNITED STATES OF AMERICA, Plaintiff, v. PEDRO MUNOZ BENITO, Defendant.*, No. 3:24-CR-26-CWR-ASH, 2024 WL 3296944 (S.D. Miss. July 3, 2024) ........................................................................................................................8

*United States v. Carbajal-Flores*, No. 20-CR-00613, 2024 WL 1013975 (N.D. Ill. Mar. 8, 2024).............................................................................................................8

*United States v. Connelly*, --- F.4th ----, 2024 WL 3963874 (5th Cir. Aug. 28, 2024) ......................................................................................... 10, 14, 15

*United States v. Daniels,* 77 F.4th 337 (C.A.5 (Miss.), 2023).................................15

*United States v. Garcia,* 2024 WL 4033086 (C.A.9, 2024) ....................... 10, 12, 13

*United States v. Harrison,* 654 F.Supp.3d 1191 (W.D.Okla., 2023)............... 14, 15

*United States v. Jackson,* 85 F.4th 468 (C.A.8 (Minn.), 2023) ........................ 14, 15

*United States v. Medina-Cantu*, 113 F.4th 537 (C.A.5 (Tex.), 2024) ......................8

*United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015) .............................8

*United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) ................ 7, 9, 15, 16

*United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist. LEXIS 168329 (W.D. Tex. Sep. 19, 2022) .................................................................. 12

*United States v. Sing-Ledezma*, No. EP-23-CR-823(1)-KC, 2023 WL 8587869 (W.D. Tex. Dec. 11, 2023) ......................................................................... 8

*United States v. Terrence*, 132 F.3d 1291 (9th Cir. 1997) ......................................... 1

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ................................... 7, 8

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ................................... 23

*Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 102 S. Ct. 3187, 73 L. Ed. 2d 896 (1982) ............................................................................................ 19

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109) .................... 24

*Worth v. Jacobson*, No. 23-2248, 2024 WL 3419668 (8th Cir. July 16, 2024) 16, 17

**Statutes**

18 U.S.C. § 3142(a) ................................................................................................ 17

18 U.S.C. § 922(g)(3) .............................................................................................. 15

18 U.S.C. § 922(g)(5) ................................................................................................ 9

18 U.S.C. § 922(n) ................................................................................................... 12

H.R.S. § 134-2 ................................................................................................ 2, 3,10

H.R.S. § 134-2(d) ............................................................................................ 4, 8, 19

The Civil Rights Act of 1866 (14 Stat. 27–30, enacted April 9, 1866, reenacted 1870) ..................................................................................................... 12

The Indian Citizenship Act of 1924 Pub. L. 68-175 ............................................... 12

## Other Authorities

*Alanoa Nickel v. Clare E. Connors*, et al.1:20-cv-00330-JMS-RT Doc. No. [22]....2

https://en.wikipedia.org/wiki/Chuuk_State ............................................................3

https://en.wikisource.org/wiki/Civil_Rights_Act_of_1866....................................11

https://files.hawaii.gov/dbedt/economic/reports/COFA_Migrants_in_Hawaii_Final. pdf ..........................................................................................................................2

https://hawaiischolars.weebly.com/uploads/1/3/5/6/135637363/hsesj_2022_final_f eb_2_23__with_signatories_.pdf ..........................................................................22

https://journals.library.columbia.edu/index.php/sjshr/article/view/12621/6249 .....22

https://www.atf.gov/firearms/qa/does-prohibition-receipt-and-possession-firearms- and-ammunition-aliens-nonimmigrant-visa ...........................................................3

https://www.civilbeat.org/2015/07/tongan-micronesian-hawaiian-students-most- likely-to-be-suspended/...........................................................................................22

https://www.civilbeat.org/2023/03/jonathan-okamura-micronesians-are-the-most- denigrated-group-in-hawaii-we-need-to-be-more-concerned/ ............................22

https://www.doi.gov/oia/compacts-of-free-association .......................................... vii

https://www.pbshawaii.org/the-discrimination-and-bias-towards-micronesians/ ...22

https://www.uscis.gov/sites/default/files/document/fact- sheets/FactSheetVerifyFASCitizens.pdf ................................................................2

*Roberts v. Connors*; et al., 1:19CV00165 Doc. No. [25]...........................................2

## Rules

F.R.C.P. Rule 65(a)(2) ...............................................................................................25

F.R.C.P. Rule 65(c) ...................................................................................................25

**Treatises**

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ...................................................................................................................22

## Constitutional Provisions

U.S. Const. amend. I § 2 ...................................................................................7, 22

U.S. Const. amend II § 2 ................................................................... passim

U.S. Const. amend. IX § 2 ....................................................................7

U.S. Const. amend. XIV § 2 ........................................................ 2, 3, 5, 11, 18, 21

US Const., art. 1, sec. 1 & 3...................................................................11

# I.    <u>Introduction</u>

Plaintiff Peter moves this Court for a preliminary injunction pursuant to FED

R. CIV. P. 65.  Plaintiff is a long-term resident of Hawaii who legally lives in the

United States pursuant to the Compact of Free Association ("COFA") the United

States has with various islands nations located in the Pacific.[12] "The Compact

grants FSM[3] and citizens of other compact states liberal opportunities to work and

reside in the United States." *Off. of Atty. Gen. v. Phillip*, No. CV06-0017-GA, 2008

WL 305343, at *3 (N. Mar. I. Jan. 30, 2008).[4] COFA aliens "admitted to the

United States under the Compacts may reside, work, and study in the United

States. They do not have the status of lawful permanent residents (also known as

Green Card holders) under the Immigration and Nationality Act (INA)."[5],[6] That

---

[1] https://www.doi.gov/oia/compacts-of-free-association

[2] "The Republic of the Marshall Islands and the Federated States of Micronesia were established in 1979, and both signed a compact of free association ("Compact") with the United States effective October 21, 1986 and November 3, 1986, respectively. The Republic of Palau was created in 1981, and entered into its own compact of free association with the United States effective October 1, 1994. Congressional approval of the compacts was codified in the Compact of Free Association Act of 1985; 48 U.S.C. § 1901." *Phillip*, WL 305343, at *2.

[3] Federated States of Micronesia.

[4] *See also United States v. Terrence*, 132 F.3d 1291, 1293 (9th Cir. 1997) ("The Compact provides a grant aid package for Palau, military defense privileges for the United States, and special immigration privileges for citizens of each.").

[5] https://www.uscis.gov/sites/default/files/document/fact-sheets/FactSheetVerifyFASCitizens.pdf

[6] As of 2018, the federal government estimates there are 16,680 COFA aliens in Hawaii. *See* https://www.doi.gov/sites/doi.gov/files/uploads/2018-cofa-report.pdf at pg. 4. Whereas other reports estimate this number to be as high as 28,000. *See*

means despite living in the United States lawfully on a permanent and long-term basis, Plaintiff is prohibited from owning firearms under Hawaii law. That violates the Second Amendment and the Equal Protection Clause of the 14th Amendment.

In *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, this Court enjoined H.R.S. § 134-2's prohibition on noncitizen's owning firearms as applied to permanent resident aliens i.e. green card holders. After the *Fotoudis* ruling, Hawaii maintained a ban on other noncitizen residents of Hawaii. This included U.S. Nationals from the U.S. Territory of America Samoa until a lawsuit was filed. Shortly after the filing of that lawsuit, the State entered into a stipulated injunction which compelled Hawaii to allow U.S. Nationals to own firearms. *See Alanoa Nickel v. Clare E. Connors*, et al.1:20-cv-00330-JMS-RT Doc. No. [22] (stipulated injunction as to State of Hawaii's ban on U.S. Nationals owning firearms).  Since then, Hawaii has updated H.R.S. § 134-2 to include U.S. Nationals and green card holders as being among those authorized to own firearms.[7]  However, Hawaii maintains a flat ban on firearm ownership for other lawfully present aliens

---

https://files.hawaii.gov/dbedt/economic/reports/COFA_Migrants_in_Hawaii_Final.pdf at pg. 6.

[7] This is the 5th lawsuit filed in Hawaii regarding the firearm rights of noncitizens. In addition to the aforementioned lawsuits, there have been two other lawsuits. Shortly after the *Fotoudis* ruling, Honolulu entered a settlement regarding its own restrictions on green card holders.  *See Roberts v. City of Honolulu*, 938 F.3d 1020, 1022 (9th Cir. 2019*); See also Roberts v. Connors*; et al., 1:19CV00165 Doc. No. [25] (settlement which allowed green card holder to apply for a carry license).

including COFA aliens.[8]  That violates the Second Amendment and the Equal

Protection Clause of the 14th Amendment.  A preliminary injunction should be

issued to stop this ongoing violation of Plaintiff's constitutional rights.

## I.    <u>Statement of Facts</u>

Plaintiff Billy Peter was born in Micronesia on March 16, 1976, on the

island of Weno which is in the State of Chuuk.[9],[10] Complaint ¶ 74. He moved to

Hawaii in 1996. *Id* ¶ 82.  He has lived continuously in Hawaii ever since. *Id* ¶ 83.

He met his wife in the United States, and they have been married since 2008. *Id* ¶

84. Plaintiff Peter has one daughter who was born in the United States and is a U.S.

citizen. *Id* ¶ 85. He is employed as a maintenance worker for Kamehameha

schools. *Id* ¶ 86. He has worked there for over six years. *Id* ¶ 87. He also works for

Enterprise Rental detailing cars and has so for over four years. *Id* ¶ 88 & ¶ 89.

In April of 2024, Plaintiff Peter went to the Honolulu Police Department

("HPD") to apply for a permit to acquire. *Id* ¶ 90. He spoke to a police officer and

---

[8] Note there is no federal law which prohibits a COFA alien from owning a firearm. And they are not required to get a hunting license unlike an alien here on a tourist or worker visa.  https://www.atf.gov/firearms/qa/does-prohibition-receipt-and-possession-firearms-and-ammunition-aliens-nonimmigrant-visa

[9] Under HRS § 134-2(d), the "chief of police of the respective counties shall issue permits to acquire firearms to: (1) Citizens, nationals, or lawful permanent residents of the United States of the age of twenty-one years or more." While there are exceptions for some visiting aliens those exceptions do not apply to COFA aliens residing in Hawaii such as Plaintiff.

[10] https://en.wikipedia.org/wiki/Chuuk_State

attempted to apply. *Id*.  He was told that he is not qualified to apply for a permit to acquire due to his immigration status as a COFA alien. *Id*. A few weeks after he went to HPD, he received a call from a police officer at HPD. *Id*. They told him to come back with all his immigration paperwork so they could inspect it. *Id*. The next day Plaintiff Peter went to HPD with his I-94, which is his immigration paperwork. *Id*. An officer at HPD told him that his paperwork was "no good" and he needed a green card (lawful permanent resident status) to own a firearm. *Id*. Plaintiff Peter would own and purchase firearms but for Hawaii law. *Id*. Plaintiff Peter completed a handgun safety course in 2024 and is thus qualified

to acquire a handgun. *Id* ¶ 91.

### A. <u>Standard for a Preliminary Injunction</u>

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.*

"It is "always in the public interest to prevent the violation of a party's constitutional rights."" *Id* (quoting *Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707, 731 (9th Cir. 2022)). "An "individual's right to carry a handgun for self-defense outside the home" under the Second Amendment is one such constitutional right." *Id* (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111, 2122 (2022)). Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

## II.    Plaintiff is Likely to Succeed on the Merits

### A. H.R.S. § 134-2's restrictions on COFA Aliens violates the Second Amendment

The Second Amendment provides that "the right of the people to keep and bear Arms . . . shall not be infringed." After conducting an extensive textual and historical analysis, the Supreme Court confirmed in *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), that the Second Amendment protects an "individual right to possess and carry weapons" for self-defense. And *McDonald v. City of Chi.*, 561 U.S. 742, 791, 130 S. Ct. 3020, 3050 (2010) incorporated the Second Amendment as to the states ("We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*."). The

text also recognizes that the right is held by "the people." That language includes, as *Heller* states, all "law-abiding, responsible" people, *Heller*, 554 U.S. at 635.

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S.  142 S. Ct. 2111 213 L. Ed. 2d 387 (2022) clarified the standard for deciding Second Amendment cases. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

"Why and how the regulation burdens the right are central to this inquiry." *United States v. Rahimi, 144 S.Ct. 1889, 1891 (U.S., 2024).* "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law

regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id* at 1898.

### III.   Plaintiff's Conduct is Covered by the Second Amendment's Plain Text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. Here, Plaintiff wishes to own firearms just like the litigant in *Heller*. "Their requests track the core constitutional right to possess a handgun for self-defense inside and outside the home, as defined by *Heller* and *Bruen*, respectively." *United States v. Perez-Garcia*, 96 F.4th 1166, 1180 (9th Cir. 2024). "[B]ecause the challenged condition restricts Fencl's ability to bear or keep any firearm—even those he would lawfully store at home for self-defense—and therefore unquestionably implicates his Second Amendment rights." *Id at* 1181. There is no question Plaintiff's proposed conduct is within the scope of the text. Thus, the only question left is whether COFA aliens are part of the People. "'[T]he people' protected by the Fourth Amendment, and by the First and Second Amendments" because they are part of our "national community" and/or "have otherwise developed sufficient connection with this country to be considered part of that community". *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990).

This Court and others have already found that permanent resident aliens lawfully residing in the United States are among the people. "[I]nterpreting § 134–2(d) to deny Fotoudis the opportunity to apply for (and to obtain, if otherwise qualified) a permit to acquire firearms, solely because he is not a U.S. citizen, also violates the Second Amendment." *Fotoudis v. City & Cnty. of Honolulu*, 54 F. Supp. 3d 1136, 1143 (D. Haw. 2014).  "Mr. Ibrahim falls within that class of people who have developed a sufficient connection with this country to be considered part of that community. He is a legal alien and before now had no convictions." *State v. Ibrahim,* 164 Wash. App. 503, 514, 269 P.3d 292, 296 (2011). "Fletcher and Pryal, who are both lawful permanent residents, have plainly satisfied the "sufficient connection" test of *Verdugo–Urquidez*." *Fletcher v. Haas*, 851 F. Supp. 2d 287, 301 (D. Mass. 2012).[11]Here, there is no meaningful difference between a permanent legal

---

[11] Prior to *Bruen*, the 7th Circuit even found unlawful aliens within the definition of the People. *United States v. Meza-Rodriguez*, 798 F.3d 664, 672 (7th Cir. 2015). However, it ultimately upheld the ban on unlawful aliens under means end scrutiny. Post-*Bruen*, several trial courts have found the federal ban on unlawful aliens owning firearms violates the Second Amendment. *United States v. Carbajal-Flores*, No. 20-CR-00613, 2024 WL 1013975, at *4 (N.D. Ill. Mar. 8, 2024). *See also United States v. Sing-Ledezma*, No. EP-23-CR-823(1)-KC, 2023 WL 8587869, at *18 (W.D. Tex. Dec. 11, 2023). *UNITED STATES OF AMERICA, Plaintiff, v. PEDRO MUNOZ BENITO, Defendant*., No. 3:24-CR-26-CWR-ASH, 2024 WL 3296944, at *8 (S.D. Miss. July 3, 2024). However, the last two decisions have been abrogated by *United States v. Medina-Cantu*, 113 F.4th 537 (C.A.5 (Tex.), 2024) which upheld 18 U.S.C. § 922(g)(5).

resident alien[12] and a COFA alien, especially in the case of Plaintiff. Plaintiff has lived here on a long-term basis and plans on living here for the rest of his life. COFA aliens such as Plaintiff are fully part of the national community.  And are part of the People because they have "developed substantial connections with the country" when they "are in this country voluntarily and presumably have accepted some societal obligations" and are thus entitled to constitutional rights. *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006) (cleaned up).

Because "the Second Amendment presumptively protects" Plaintiff's "proposed course of conduct" "the Government bears the burden of proving that application of" H.R.S. §134-2 "firearm condition to them is consistent with our nation's "historical tradition of firearm regulation."" *Perez-Garcia*, 96 F.4th at 1181. "At the second prong of the *Bruen* framework, the central question is whether the modern regulation is "relevantly similar" to historical laws and traditions, *id.* at 29, 142 S.Ct. 2111 (citation omitted), so as to "evince[ ] a comparable tradition of regulation," *id.* at 27, 142 S.Ct. 2111. *Bruen* emphasized that we must uphold a modern regulation if the government identifies a "well-established and representative historical analogue." *Id.* at 30, 142 S.Ct. 2111 (emphasis omitted)." *Id.* "Outlier" regulations do not and cannot establish a national tradition. *Bruen*, 597

---

[12] In fact, others must go through a lengthy process to become a lawful permanent resident, renewable at most at ten year increments, whereas COFA aliens may just remain in the United States lawfully in perpetuity.

U.S. at 30, 55 n.22, 65, 70. *See also United States v. Connelly*, --- F.4th ----, 2024 WL 3963874 at *9 (5th Cir. Aug. 28, 2024) (rejecting the use of "three states, between 1868 and 1883, [which] barred citizens from carrying guns while drunk: Kansas, Missouri, and Wisconsin"). Similarly, in *Rahimi*, the surety and affray laws on which the Court relied were rooted in the common law at the time of founding *and* codified in founding era statutes in "at least four States—Massachusetts, New Hampshire, North Carolina, and Virginia." *Rahimi,* 144 S.Ct. at 1901.

There simply is no history of lawfully admitted individuals who are living within the country on a long-term basis having their firearm rights restricted in the United States solely due to their immigration status. Historically, the only people that had their Second Amendment rights restricted were those that were found to be dangerous. Within the context of group wide disarmament, that meant that the group was likely to engage in insurrection.  Judge Van Dyke recently reviewed this history, and he observed, "[i]n each situation, the group had the potential to act as enemy combatants and as such was feared to take up arms and cause violence against the broader community." *United States v. Garcia,* 2024 WL 4033086, at *24 (C.A.9, 2024) (Van Dyke Dissenting). Here, there is no indication that COFA aliens are "a group that was expected to take up arms against the government." *Id* at *26. Thus, they are inapposite to any historical analogy the State might produce. While there were historical bans on African Americans especially slaves, Indians,

certain religious minorities and those who were considered disloyal, this was because there was a perceived risk of political violence that is not at issue here.

Laws disarming slaves, other African Americans and Indians are readily distinguishable because during the Colonial Era slaves and Indians were not considered part of the national community.[13], [14]  Thus, these laws are inapposite because as shown above, COFA aliens are part of the people. Furthermore, "[i]t should go without saying that such race-based exclusions would be unconstitutional today." *Kanter v. Barr*, 919 F.3d 437, 458 n.7 (7th Cir. 2019) (Barrett, J., dissenting).[15],[16]  Therefore, these practices are not valid to establish a

---

[13] *See Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857) (finding that enslaved individuals are not part of the citizenry).

[14] *See, e.g.,* US Const., art. 1, sec. 1 & 3. House of Reps shall be chosen by the people of the US, apportionment shall be determined by the "whole number of free persons," excluding "Indians not taxed." *See also* The Civil Rights Act of 1866 (14 Stat. 27–30, enacted April 9, 1866, reenacted 1870) (which is generally considered a precursor to the 14th Amendment) states: "That all persons born in the United States and not subject to any foreign power, excluding Indians not taxed, are hereby declared to be citizens of the United States…." Available at https://en.wikisource.org/wiki/Civil_Rights_Act_of_1866 (last accessed 9/24/2024). Native Americans were not granted citizenship until the passage of The Indian Citizenship Act of 1924 Pub. L. 68-175.

[15] In *McDonald v. City of Chicago*, the Supreme Court pointed to licensing laws from Florida and Mississippi as examples of the "systematic efforts" of "the States of the old Confederacy" to "disarm . . . blacks." 561 U.S. 742, 771 (2010). *See also Bruen*, 142 S. Ct. at 2151 ("After the Civil War, of course, the exercise of this fundamental right by freed slaves was systematically thwarted.").

[16] *Lara v. Commr. Pennsylvania State Police, 91 F.4th 131 (3d Cir. 2024) cert. granted, judgment vacated sub nom. Paris v. Lara, No. 24-93, 2024 WL* (rejecting the use of historical laws disarming disfavored minorities).

historical tradition because whatever authority they might otherwise possess has been wrung out of them through the blood of tens of thousands of Americans and the 13th, 14th and 15th Amendments.[17] Furthermore, the how and the why of these restrictions are different. Colonial laws disarmed African Americans because "many in the colonies had an "equivalent fear" of an armed uprising by slaves and free Blacks against the slave-holding regime." *United States v. Garcia*, 2024 WL 4033086, at \*22 (C.A.9, 2024). "In response, many colonies prohibited slaves or even free Blacks from possessing arms." *Id.* Thus, the "why" of these colonial laws is different from modern laws is different from Hawaii's ban on COFA aliens because there is no indication that COFA aliens are likely to engage in insurrection. The why of later discriminatory Black Codes were also different.[18]

The Black Codes were designed to deprive freed slaves of their civil rights, including the right to keep and bear arms otherwise protected by State law. *See McDonald v. City of Chicago*, 561 U.S. 742, 771, 779 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 614 (2008). In *Kipke v. Moore*, which deals with

---

[17] *See also United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist. LEXIS 168329, at \*27 (W.D. Tex. Sep. 19, 2022) (rejecting the use of disarming disfavored groups to justify 18 U.S.C. § 922(n).

[18] "History has a role to play in Second Amendment analysis, but a rigid adherence to history, (particularly history predating the inclusion of women and people of color as full members of the polity), impoverishes constitutional interpretation and hamstrings our democracy." *Rahimi*, 144 S.Ct. at 1905 (Sotomayer, Concurring).

Maryland's sensitive places laws, Judge Russell refused to consider laws created as part of states' discriminatory "Black Codes," which sought to deprive African Americans of their rights because: (1) the Supreme Court has cautioned against relying on such laws; (2) laws primarily aimed at only one group of people do not have the same impact on the right to bear arms as laws applicable to all citizens; and (3) such laws were intended to discriminate, rather than to advance public safety. *Kipke v. Moore*, Civil Action No. GLR-23-1293, 2023 U.S. Dist. LEXIS 174934, at *41-42 (D. Md. Sep. 29, 2023). ")." *See also Koons v. Platkin*, Civil 22-7464 (RMB/AMD), 53 (D.N.J. May. 16, 2023) (discussing Black Codes). As the rationale is different, reliance on these laws fails *Bruen's* how and why test.

"Many colonies also enacted firearm laws targeting American Indians based on the history of warfare between the Indians and European settlers." *United States v. Garcia*, 2024 WL 4033086, at *22 (C.A.9, 2024).  These laws were part of a comprehensive scheme aimed at defending the fledgling colonies from violent encounters with their Indian neighbors. *Id* at *22. Again, the how and why of these laws are different because there is no indication COFA aliens are likely to engage in warfare against the state.  Arms prohibitions on those that refused to swear loyalty oaths are also not relevantly similar to Hawaii's ban on COFA aliens.  If "all a legislature must do to prohibit a group of persons from possessing arms is to declare that group "untrustworthy," then the Second Amendment would provide

13

virtually no limit on Congress's discretion." *United States v. Harrison,* 654

F.Supp.3d 1191, 1218 (W.D.Okla., 2023) (footnotes omitted)

Founding Era governments did not disarm Loyalists because they were

thought to lack self-control; it was because both (BOTH?) were viewed as potential

threats to the integrity of the state. "Oaths were meant to reduce the danger before

the threat materialized into something more." *United States v. Jackson,* 85 F.4th 468,

472 (C.A.8 (Minn.), 2023) (Strass, Dissenting). The 5th Circuit has also found these

laws are not relevantly similar to 18 U.S.C. § 922(g)(3) because drug users are not

political traitors. *United States v. Connelly*, 2024 WL 3963874, at *6 (C.A.5 (Tex.),

2024) ("Each of those laws was generally based on concerns for the safety of the

polity, but each disarmament also had its own unique political or social motivations.

Almost all the laws disarming dissidents were passed during wartime or periods of

unprecedented political turmoil.") COFA aliens are similarly "not a class of political

traitors, as English Loyalists were perceived to be."

The *Harrison* court observed that restrictions on Catholics were similarly not

relevant. "[I]t appears that only two American colonies—Virginia in 1756 and

Pennsylvania in 1759—ever acted to disarm Catholics. Two laws in place during

time of war hardly demonstrate a course of consistent practice sufficient to establish

a constitutionally significant tradition.**"** *Harrison,* 654 F.Supp.3d at 1220. "Second,

at the time these provisions were enacted, the operative rights-protecting document

14

was the English Bill of Rights, which limited the right 'to have arms' to Protestants.
Catholics were thus excluded from the protections of the right. Laws applying to
groups that was not protected by the right to armed self-defense cannot provide any
insight into that right's scope." *Id*. (footnotes omitted). COFA aliens are not "like
Catholics and other religious dissenters who were seen as potential insurrectionists."
*Connelly*, 2024 WL 3963874, at *6. Thus, the State cannot rely on these laws to
justify their ban on COFA aliens. "[T]he perceived threat was as much political as it
was religious." *United States v. Daniels,* 77 F.4th 337, 351 (C.A.5 (Miss.), 2023).
"Early laws were about lessening the danger posed by armed rebellion or
insurrection." *Jackson,* 85 F.4th at 470 (Strass, dissenting).  COFA aliens are not
similar to historical groups which were disarmed because they do not present a threat
of insurrection or rebellion.

Similarly, historical laws which individually disarmed people cannot serve
as a historical basis for disarming COFA aliens. The Ninth Circuit reviewed this
history and found several criteria a restriction must satisfy to be constitutional.

> The Government in this case acted in accordance with this historical
> tradition. The Government established an individualized need for
> applying the firearm condition against each Appellant in adversarial
> proceedings before two sets of neutral judicial officers. Those neutral
> judicial officers determined based on the evidence presented that
> Appellants posed a risk while on bail and that the firearm condition
> was the least restrictive way to assure the safety of the community as
> well as their appearances in court.

*U.S. v. Perez-Garcia*, 96 F.4th 1166, 1190 (9th Cir. 2024)

In doing so it endorsed then Judge Barret's dissent in *Kanter v. Barr*. "[T]he Bail Reform Act's firearm condition is a clear exercise of Congress' historical legislative power to disarm those who are "***judged*** to be a threat to the public safety." *Id at* 1189 (quoting *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting), abrogated by *Bruen*, 597 U.S. at 17, 142 S.Ct. 2111) (emphasis added). Furthermore, the Ninth Circuit found that a prohibition must be individually tailored by a judicial officer. "Relatedly and importantly, the firearm condition at issue here is individually tailored and applied only after consideration by a ***judicial officer***." *Id* (emphasis added). The Court found firearm prohibitions must be the least restrictive means available. *Id* at 1190. And *Perez-Garcia* emphasized that "the firearm condition is a temporary one, lasting only through the pendency of trial, see 18 U.S.C. § 3142(a), and the condition is imposed only upon individualized consideration by a judicial officer." *Id* at 1181.

The 8th Circuit used similar reasoning recently to strike down Minnesota's ban on young adults carrying firearms. Minnesota attempted to justify its ban by using a report that claimed "the murder arrest rate for 18 to 20-year-olds is almost 33 percent higher than the murder arrest rate for the next most homicidal age group." And they are the "most likely" of any age group "to use firearms to commit homicides and other violent crimes." *Worth v. Jacobson*, No. 23-2248, 2024 WL 3419668, at *10 (8th Cir. July 16, 2024). The 8th Circuit rejected this

16

rationale . "After all, even using these recent statistics, it would be a stretch to say that an 18-year-old "poses a clear threat of physical violence to another."" *Id.* (quoting *Rahimi*, 144 S.Ct. at 1901). As the Supreme Court has said the government cannot disarm an individual or a group simply because it believes the person is not "responsible." *Rahimi,* 144 S.Ct. at 1903. There is no evidence that COFA aliens pose a clear threat of physical violence. Additionally, Hawaii cannot show why its "other statutory restrictions, none of which the Plaintiffs have challenged, do not reduce the risk of danger already." *Id.* "A legislature's ability to deem a category of people dangerous based only on belief would subjugate the right to bear arms 'in public for self-defense' to 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id* at *11 (quoting *Bruen,* 597 U.S. at 70, 142 S.Ct. 2111).

Here, Hawaii will not be able to rely on historical laws which engage in individual disarmament because there is no evidence that COFA aliens are dangerous as a class much less a judicial determination that they are. Even if Hawaii could, the law would remain unconstitutional as applied to Plaintiff Peter because he has alleged facts that demonstrate he is a law-abiding citizen. Furthermore, unlike historical laws, the prohibition on COFA aliens owning firearms is permanent in nature. *See Rahimi*, 144 S.Ct. at 1901, 2024 WL 3074728, at *9 (noting that the statute at issue did "not broadly restrict arms use by

17

the public generally"). This further demonstrates how these laws are not relevantly similar. Hawaii's ban on COFA aliens violates the Second Amendment.

### A. H.R.S. § 134-2's Restrictions on COFA Aliens violates the Equal Protection Clause of the Fourteenth Amendment

Hawaii's ban on COFA aliens owning firearms violates the equal protection clause of the 14th Amendment. "The first step in equal protection analysis is to identify the state's classification of groups." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (citation omitted). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). And "[t]he groups need not be similar in all respects, but they must be similar in those respects relevant to the [government's] policy." *Arizona Dream Act Coalition*, 757 F.3d at 1064. Here, the class at issue are COFA aliens.

Alienage, or the state of being an alien, i.e. a non-citizen of the United States, is a suspect class that triggers strict scrutiny in equal protection claims when dealing with state law. *Graham v. Richardson*, 403 U.S. 365 (1971).[19]  Under HRS § 134-2(d), COFA aliens are prohibited from owning firearm whereas citizens and others can. While there are exceptions for some visiting aliens those exceptions do not

_____

[19] "In general, state classifications based on alienage are subject to strict scrutiny." *Korab v. Koller*, No. CIV. 10-00483 JMS, 2010 WL 4688824, at *4 (D. Haw. Nov. 10, 2010) (Collecting cases)

apply to COFA aliens such as Plaintiff. Section 134-2(d) is thus not "facially neutral legislation." *See Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 484, 102 S. Ct. 3187, 73 L. Ed. 2d 896 (1982) ("[W]hen facially neutral legislation is subjected to equal protection attack, an inquiry into intent is necessary[.]").  HRS § 134-2(d) explicitly treats COFA aliens differently than U.S. citizens solely because of their status as aliens. Classifications based on alienage are "suspect" for purposes of analyzing a violation of the Equal Protection clause and are subject to "strict judicial scrutiny whether or not a fundamental right is impaired."  *See Fotoudis,* 54 F. Supp. 3d at 1142. Thus, strict scrutiny applies, and the State of Hawaii must demonstrate a compelling government interest that is narrowly tailored to achieve that interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div*., 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.").

Applying strict scrutiny, denying Plaintiff the opportunity to apply for (and to obtain) a permit merely because he is a COFA alien "is not a narrowly tailored means of achieving that goal." *Smith v. South Dakota*, 781 F. Supp. 2d 879, 886 (D.S.D. 2011) (citing *Application of Griffiths*, 413 U.S. 717, 725, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973) (rejecting the argument that 'the possibility that some resident aliens are unsuited to the practice of law' could be a 'justification for a wholesale ban'")). *See also Fletcher v. Haas*, 851 F. Supp. 2d 287, 303 (D. Mass. 2012) ("Although

Massachusetts has an interest in regulating firearms to prevent dangerous persons from obtaining firearms . . . the statute here fails to distinguish between dangerous non-citizens and those non-citizens who would pose no particular threat if allowed to possess handguns."); *Say v. Adams*, 2008 U.S. Dist. LEXIS 20183, 2008 WL 718163, at *3 (W.D. Ky. Mar. 14, 2008) (granting an injunction against enforcing a Kentucky law limiting the issuance of a license to carry concealed weapons to U.S. citizens, reasoning in part that "[a] blanket prohibition discriminating against aliens is not precisely draw[n] to achieve the goal of facilitating firearms purchases when there exists a nondiscriminatory way to achieve the same goals"). Accordingly, Plaintiff has "succeeded in proving a violation of equal protection—" because he was "denied an opportunity to apply for a permit to acquire firearms based solely on his status as a" COFA alien. *Fotoudis* 54 F. Supp. 3d at 1143.

Even if this Court applied rational basis review to Hawaii's ban on COFA aliens, it would still be unconstitutional. The legislature's desire to "protect" favored groups' "expectations" or "respond to the demands of a political constituent" is not a cognizable state interest. *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (reversing dismissal of an equal protection claim given arbitrary "carve out[s]" to select groups); *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 878 (1985) (law unconstitutional where its "aim" was "to favor domestic industry within the State"). There is no rational basis to deny COFA aliens the

right to own firearms while allowing green card holders and citizens to do so. They are similarly situated "in all relevant respects" to other parties. *Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021) (citation omitted). This Court's decision in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), is instructive. In *Silveira*, the Court concluded that granting retired peace officers greater access to firearms over similarly situated civilians violated the Equal Protection Clause under rational basis review. Similarly, there is no rational reason to grant green card holders and citizens access to firearms and not COFA aliens.  The only conceivable reason is due to the political and/or economic unpopularity of COFA aliens.[20] The United States Supreme Court has long held that drawing classifications based on political unpopularity violates the Equal Protection Clause. "[I]f the constitutional conception of 'equal protection of the laws' means

---

[20]That COFA aliens face discrimination in Hawaii is well documented. *See* https://www.civilbeat.org/2023/03/jonathan-okamura-micronesians-are-the-most-denigrated-group-in-hawaii-we-need-to-be-more-concerned/ (news article); https://hawaiischolars.weebly.com/uploads/1/3/5/6/135637363/hsesj_2022_final_feb_2_23__with_signatories_.pdf (Research paper on Micronesian discrimination); https://hawaiischolars.weebly.com/uploads/1/3/5/6/135637363/hsesj_2022_final_feb_2_23__with_signatories_.pdf  (another research paper); https://www.usccr.gov/files/pubs/2019/08-13-Hawaii-Micronesian-Report.pdf ("The reality is that [Micronesian migrants] are subject to outright discrimination and hate speech, and just a lack of understanding."); https://www.civilbeat.org/2015/07/tongan-micronesian-hawaiian-students-most-likely-to-be-suspended/ (school discrimination); https://www.pbshawaii.org/the-discrimination-and-bias-towards-micronesians/ (similar) https://journals.library.columbia.edu/index.php/sjshr/article/view/12621/6249 (former Micronesian student in Hawaii detailing the discrimination he faced)

anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). The legislature's desire to "protect" favored groups' "expectations" or "respond to the demands of a political constituent" is not a cognizable state interest. *See also Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (reversing dismissal of an equal protection claim given arbitrary "carve out[s]" to select groups). Even if rational basis review applied, Hawaii's restriction on COFA aliens is unconstitutional because it discriminates against COFA aliens without a legitimate reason. Plaintiff is likely to succeed on the merits of his claim.

## IV.    Plaintiff will suffer irreparable harm

Plaintiff is suffering irreparable harm because he cannot exercise his constitutional right to own a firearm unless a preliminary injunction is granted. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing

so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation." *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). *See also Ezell v. City of Chi.*, 651 F.3d 684. 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable" harm).

## V.     Granting the TRO/PI is in the Public Interest and Serves Equity

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). [W]e *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional

23

violation is in the public interest. *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023).

## VI. <u>Waiver of Bond is Proper and Appropriate Under These Circumstances</u>

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiff has a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, thus rendering a waiver both proper and appropriate.

## VII. <u>This Court Should Consolidate Pursuant to Rule 65(a)(2)</u>

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits*." Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). Here, there cannot be any serious dispute as to what the state law says. Therefore, the matter before this court is predominantly legal in nature. Thus, this case is a prime candidate for consolidation.

## VIII.  Conclusion

The preliminary injunction should issue.

Dated: November 27, 2024.

Respectfully submitted,
*Counsel for Plaintiff*

/s/*Kevin Gerard O'Grady*
Kevin O'Grady

*/s/ Alan Beck*
Alan Alexander Beck